IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DENNIS EASLY, | ) | Civil No.: 6:12-cv-01173-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

      Rory Joseph Linerud
      Linerud Law Firm
      P.O. Box 1105
      Salem, OR 97308-1105

           Attorney for Plaintiff


      S. Amanda Marshall, U.S. Attorney
      Adrian L. Brown, Asst. U.S. Attorney
      1000 S.W. 3rd Avenue, Suite 600
      Portland, OR 97204-2902

Jeffrey R. McClain
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Dennis Easly brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision of the Commissioner of Social Security (the Commissioner) determining that he was no longer disabled and terminating his receipt of Disability Income Benefits (DIB) under the Social Security Act (the Act). Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits and resumption of DIB payments.

For the reasons set out below, the Commissioner's decision should be affirmed.

## **Procedural Background**

Plaintiff applied for DIB in August 2001, alleging that he had been disabled since March 2001 because of impairment of his right ankle and sleep apnea. In April 2003 he was found to be disabled as of the date of his alleged onset of disability in 2001 because his ankle impairment met Listing 1.02A (Major Dysfunction of a Joint), of Listing 1.00 of 20 C.F.R. Part 404, Subpart P, Appendix 1, and he began receiving benefits.

During August and September 2004, an investigator from the Commissioner's Cooperative Disability Investigation Unit visited Plaintiff's home after a neighbor reported that Plaintiff was building a log house by himself and had stated that he "had beat SSA." The investigator reported that Plaintiff did not appear to have any difficulty with mobility except for an occasional slight limp, used no type of assistive device, and jumped nearly three feet to the

FINDINGS AND RECOMMENDATION - 2

ground, landing on both feet without apparent discomfort or difficulty.  The investigator spoke with Plaintiff.  He reported that Plaintiff said he was doing all the construction work on the house, was operating cranes and moving logs, and was installing electrical and plumbing systems by himself.  In October 2004, the investigator videotaped Plaintiff in work clothes, walking around the project and climbing an eight foot ladder without difficulty.

Based upon the investigator's report, the Commissioner determined that Plaintiff was no longer disabled as of December 31, 2004, and Plaintiff's disability benefits were discontinued.

In a request for reconsideration of the Commissioner's determination that he was no longer disabled, Plaintiff alleged that he continued to be disabled because of  impairment to his right foot and sleep apnea.  A state agency disability agency hearing officer conducted a hearing in May, 2005, and upheld the determination that Plaintiff was no longer disabled.

Pursuant to Plaintiff's request for further review, a hearing was held before Administrative Law Judge (ALJ) John Bauer on October 4, 2007.  In a decision issued on January 23, 2008, ALJ Bauer found that Plaintiff's disability had ended on December 31, 2004, because Plaintiff could perform a full range of light work.  That decision became the final decision of the Commissioner on January 18, 2008, when the Appeals Council denied Plaintiff's request for review.

Plaintiff appealed the Commissioner's decision terminating his receipt of disability benefits to the district court.  In a Findings and Recommendation filed on January 6, 2009, Magistrate Judge Paul Papak concluded that the ALJ had improperly applied the "grids" to find that Plaintiff's disability had ended, and recommended that the action be remanded to the Agency for further proceedings and reconsideration of the Commissioner's decision terminating his receipt of disability benefits.

FINDINGS AND RECOMMENDATION - 3

Following adoption of Magistrate Judge Papak's recommendation, a hearing was held before ALJ Michael Gilbert on July 22, 2010.  In a decision issued on November 10, 2010, ALJ Gilbert found that Plaintiff's disability had terminated on December 31, 2004.  That decision became the final decision of the Commissioner on June 12, 2012, when the Appeals Council denied Plaintiff's request for review.  In the present action, Plaintiff challenges that decision.

### Background

Plaintiff was born on June 27, 1954, and was 56 years old at the time of the most recent decision of the Commissioner following remand.  He graduated from high school, and worked for many years as a pile driver.

In 1986, Plaintiff's right foot was nearly amputated in a motorcycle accident.  He was able to return to his work as a pile driver after recovering from surgery to reattach his foot.  Plaintiff developed severe arthritis in his injured foot, and had additional surgery in April and October, 2001.  He had surgery in January, 2003 to remove  hardware from his injured foot.  As noted above, in April 2003 Plaintiff received a favorable disability determination finding that he had been disabled since March 2001.

### Determining Whether Disability Has Ended

An eight-step sequential evaluation procedure is applied to determine whether a claimant's established disability has ended.  20 C.F.R § 404.1594.  At the first step of that procedure, the Commissioner determines whether the claimant is currently engaging in substantial gainful activity.  20 C.F.R. § 404.1594(f)(1).

If the claimant is not engaging in such activity, the Commissioner next determines whether the claimant's impairments meet or equal the severity of a presumptively disabling impairment in the "Listings."  20 C.F.R. § 404. 1594(f)(2).

FINDINGS AND RECOMMENDATION - 4

At the third step, the Commissioner determines whether the claimant's impairment has improved medically since disability was established. 20 C.F.R. §404.1594(f)(3).

If the claimant's impairment has improved, at step 4 the Commissioner evaluates whether the improvement has affected the claimant's ability to work. 20 C.F.R. § 404.1594(f)(4). If the answer at this step is "no," the Commissioner proceeds to step 5 and determines whether any exceptions to medical improvement apply. 20 C.F.R. § 404.1594(f)(5). If the answer at step 4 is "yes," the Commissioner proceeds to step 6 and determines whether the claimant's current impairments, in combination, are severe. 20 C.F.R. § 404.1594(f)(6).

If the claimant's impairments are severe, the Commissioner proceeds to determine, at step 7, whether the claimant retains the functional capacity required to perform any of his past relevant work. 20 C.F.R. § 1594(f)(7). If the answer to that question is "no," the Commissioner proceeds to determine, at step 8, whether the claimant can perform "other work" in the national economy. 20 C.F.R. § 404.1594(f)(8). A claimant who can perform such work is no longer disabled.

## **Medical Record**

I will address the parts of the medical record relevant to Plaintiff's arguments in the discussion below.

## **Testimony**

### **Plaintiff**

Plaintiff testified as follows during the most recent hearing.

Plaintiff was receiving disability benefits under a pension from the Pile Drivers' Union, and had not worked since his application for disability benefits under the Social Security Act had

FINDINGS AND RECOMMENDATION - 5

been granted in 2003.

Plaintiff's medical condition had worsened slightly since 2003, and he was disabled by sleep apnea and pain and limitations in his right ankle and leg. The CPAP machine he used for his sleep apnea sometimes leaked around the mask and the hose sometimes would tangle and wake him. When the machine operated correctly it was of some help.

Plaintiff stopped taking all prescription pain medications in 2007 or 2008: The medications had not been "really killing the pain," and caused depression, anger management issues, and problems with concentration. Plaintiff experienced pain daily at a level of 7 to 8 on a 10 point scale, and took over-the-counter medications such as Tylenol and Advil every day.

Plaintiff had undergone surgery to fuse a disc in his cervical spine during November 2009, but had not told his attorney about the operation or obtained related medical records by the time of the hearing.

Plaintiff did not drive often because it was difficult for him to stay awake. He also had difficulty staying awake when he watched television, and had been unable to take a union desk job because he could not stay awake. His ability to concentrate had improved slightly since he stopped taking prescription pain medication.

Plaintiff's hobbies included shooting small caliber rifles and pistols and tying flies. He could sit for about an hour, tying flies, before he needed to take a break. Plaintiff had not gone fishing during the previous two or three years.

Plaintiff did little housework. He occasionally took out the garbage.

In 2004, Plaintiff had not told a fraud investigator that he was building a house by himself, or that he was performing the electrical and plumbing work. He did not recall telling the

FINDINGS AND RECOMMENDATION - 6

investigator that he operated the cranes on the property himself. Plaintiff had purchased the cranes from a company he had worked for, and the cranes were used by the company that was erecting the log house to save the cost of renting cranes for the project.

**Lay Witness Testimony**

Lauren Easly, Plaintiff's spouse, testified as follows at the hearing in 2010.

Plaintiff did not "really pay attention" because he did not sleep well. He "tinker[ed]" around the house and did things that "normal" people did, such as taking out the garbage and feeding the dog. However, he did not remember to water the dog, and could not "remember anything."

Ms. Easly "had no idea" how the neck injury to which Plaintiff testified had occurred. Doctors were not sure what had caused Plaintiff's neck problem, though one doctor thought it might have been related to Plaintiff's motorcycle accident.

Plaintiff generally fell asleep after sitting for short periods of time, and would have problems going to work because he would fall asleep while driving. Plaintiff's foot had not been properly reattached following his accident, and Plaintiff frequently tripped and fell.

Plaintiff and the witness had been trying to build the house where they were living for the previous nine years. Plaintiff would "read the blueprints and . . . try to get things organized," but others did the physical work. Plaintiff had told an investigator years earlier that he was building the house because "he thinks he's macho" and wanted to "tell everyone he was doing everything." Plaintiff had not done the electrical and plumbing work. Ms. Easly did not know why the plumbing had not been finished, but noted that Plaintiff would agree to call contractors and then forget to do so.

FINDINGS AND RECOMMENDATION - 7

### ALJ's Decision

The ALJ first noted that, in the decision dated April 22, 2003, finding that Plaintiff was disabled, Plaintiff's injured right ankle and sleep apnea were found to be medically determinable impairments, and that Plaintiff's ankle impairment was found to meet the requirements of a Listing for Major Dysfunction of a Joint, 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ next found that Plaintiff had not engaged in substantial gainful activity between the onset of his disability and December 31, 2004, the date upon which his disability was determined to have ended.

At the next step of his analysis, the ALJ found that Plaintiff had not developed any additional impairments between April 22, 2003, when he was determined to be disabled, and December 31, 2004, when his disability was determined to have ended.  In reaching this conclusion, the ALJ noted that Plaintiff had testified that he had developed an impairment of the cervical spine which was treated by a cervical spine fusion in November 2009, but that he had submitted no medical records supporting that assertion following the hearing.  Citing concerns about Plaintiff's credibility discussed more fully elsewhere in his decision, the ALJ concluded that he could not find that Plaintiff's alleged cervical spine condition was "even a medically determinable impairment" or determine the extent, if any, to which any cervical spine impairment affected his functioning as of December 31, 2004.

The ALJ next found that after December 31, 2004, Plaintiff did not have an impairment or combination of impairments that medically met or equaled any presumptively disabling impairment in the Listings, 20 C.F.R. Part 404, Subpart P, Appendix 1.

At the next step of his analysis, the ALJ found that substantial evidence in the record

indicated that the severity of Plaintiff's medical  impairments had decreased as of December 31, 2004, and that his impairment(s) no longer met or medically equaled an impairment in the Listings as of that date.

The ALJ next found that, as of December 31, 2004, Plaintiff's right ankle impairment and sleep apnea continued to be severe impairments within the meaning of 20 C.F.R. 404.1594(f)(6).

The ALJ next assessed Plaintiff's residual functional capacity.  He found that, as of December 31, 2004, Plaintiff had the residual functional capacity (RFC) required to perform "medium work" with the following limitations: He could only occasionally operate moving machinery and be exposed to unprotected heights and hazardous machinery; could no more than frequently operate foot controls with his right lower extremity or climb ramps/stairs, balance, stoop, kneel, or crawl; and could no more than occasionally climb ladders/ropes/scaffolds, or crouch.  In reaching this conclusion, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his right ankle impairment and sleep apnea were not credible to the extent they were inconsistent with that RFC assessment. He also found that statements and testimony provided by Lauren Easly, Plaintiff's wife, were not wholly credible.

The ALJ next found that, as of December 31, 2004, Plaintiff could not perform his past relevant work as a Pile Driver.

At the final step of his analysis, the ALJ found that, as of December 31, 2004, Plaintiff could perform other work that existed in substantial numbers in the national economy.  As examples of that work, he cited Dietary Aide and Laundry Worker positions.

**Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Claimants bear the initial burden of establishing disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record,  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work."  Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

**Discussion**

As noted above, an eight step analysis applies when the Commissioner terminates a disabled claimant's receipt of disability benefits.   Plaintiff contends the ALJ erred at the final step in finding that he could perform jobs that exist in substantial numbers in the national economy.  He argues that the ALJ erred in failing to specify any functional workplace limitations

FINDINGS AND RECOMMENDATION - 10

based upon the finding that his sleep apnea was a severe impairment.  He also contends that the ALJ erred in finding that he and his wife were not wholly credible.

1. **Implications of Finding Sleep Apnea was "Severe" Impairment**

The "severe impairment" analysis is a "*de minimis* screening device to dispose of groundless claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  An impairment or combination of impairments is "severe" if it significantly limits a claimant's ability to perform basic work activities.  SSR 96-3p.  An impairment is not severe only if it is a slight abnormality that has no more than a minimal effect on the ability to carry out such activities.  Id.

The ALJ found that as of December 31, 2004, when his disability was determined to have ceased,  Plaintiff's right ankle impairment and sleep apnea continued to be severe impairments within the meaning of 20 C.F.R. 404.1594(f)(6) because they were diagnosed by an acceptable medical source and "caused more than a minimal effect" on Plaintiff's ability to perform basic work-related activities.  The ALJ noted that Plaintiff had testified that the CPAP machine used to treat his sleep apnea was a "struggle" at times, and testified that he was tired much of the time and could not drive much or perform an office job because he could not keep from falling asleep. He further noted that Plaintiff "ultimately acknowledged that his CPAP helps him" and that sleep studies conducted in 2005 showed that Plaintiff had "good sleep efficiency and excellent sleep continuity," and that a sleep specialist had reported that his sleep apnea was "quite well controlled" with a CPAP machine.

Plaintiff contends that the ALJ erred in "inexplicably" failing to include any "workplace limitations" based upon his sleep apnea despite a finding that it was a "severe" impairment.  He also contends that the ALJ should have solicited additional medical opinions in order to assess the functional limitations caused by Plaintiff's sleep apnea.

FINDINGS AND RECOMMENDATION - 11

These arguments fail for at least four reasons.  First, in limiting Plaintiff to only occasional exposure to unprotected heights and hazardous machinery and to only occasional operation of moving machinery, the ALJ appeared to address many of the  minimal difficulties Plaintiff might reasonably be expected to have, based on the record, because of sleep apnea.

Second, assuming that these limitations were not intended to address any problems arising from what the ALJ reasonably found to be Plaintiff's well controlled sleep apnea,  the mere fact that an impairment is  "severe" does not presumptively require specification of particular  related functional limitations.  See Bray v. Commissioner, 554 F.3d 1219, 1228-29 (9th Cir. 2009) (no support for proposition that "severe" impairment "must correspond to limitations on claimant's ability to perform basic work activity").

Third, if the ALJ erred in his consideration of Plaintiff's sleep apnea, the record supports the conclusion that the mistake was in identification of that disorder as a "severe" impairment rather than in failing to adequately account for it in the RFC assessment.  The ALJ correctly noted that Dr. Michael McDonald, a sleep specialist, found that, with use of a CPAP machine, Plaintiff's sleep apnea was "dramatically controlled," his sleep continuity appeared to be excellent and his sleep efficiency was "good as well."  Any conclusion Plaintiff's sleep apnea had more than a "minimal effect" on Plaintiff's ability to perform work activities, or resulted in limitations not accounted for in the ALJ's RFC,  would depend entirely on the testimony of Plaintiff and Plaintiff's wife.  As discussed below, the ALJ adequately supported his conclusion that these witnesses were not credible.

An impairment that is effectively controlled by treatment cannot provide a basis for establishing disability.  E.g., Warre v. Commissioner, 439 F.3d 1001, 1006 (9th Cir. 2006). Because the  record here supports only the conclusion that Plaintiff's sleep apnea was well

controlled, it could not provide a basis for establishing that Plaintiff continued to be disabled after December 31, 2004.

Finally, Plaintiff's contention that the ALJ should have sought additional medical opinions concerning functional limitations related to his sleep apnea fails because further development of the record is required "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).  Neither of those conditions was met here, where the ALJ relied on unambiguous evidence that a CPAP machine effectively controlled Plaintiff's sleep apnea, and  the record was sufficient to permit reasonable evaluation of the evidence concerning Plaintiff's impairments and limitations.

## 2. **Plaintiff's Credibiltiy**

Plaintiff contends that the ALJ erred in finding that his testimony concerning the severity of his symptoms and impairments was not wholly credible.

## **Standards for Evaluating Credibilty**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  If a claimant produces medical evidence of an underlying impairment that is reasonably expected to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

In evaluating a claimant's credibility, an ALJ must examine the entire record and consider several factors, including the claimant's daily activities, medications taken and their

effectiveness, treatment other than medication, measures other than treatment used to relieve pain

or other symptoms, and "any other factors concerning the individual's functional limitations and

restrictions due to pain or other symptoms."  SSR 96-7.   An ALJ may also consider such factors

as a claimant's inconsistent statements concerning his symptoms and other statements that appear

less than candid, unexplained or inadequately explained failure to seek treatment or follow a

prescribed course of treatment, medical evidence tending to discount the severity of the

claimant's subjective claims, and vague testimony as to the alleged disability and symptoms.

Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).

　　　　If substantial evidence supports the ALJ's credibility determination, it must be upheld,

even if some of the reasons cited by the ALJ are not correct.  Carmickle v. Commissioner of

Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008).

**Analysis**

　　　　The ALJ provided a number of clear and convincing reasons for discounting Plaintiff's

credibility.  He noted that, though Plaintiff testified that his inability to sleep well prevented him

from staying awake while driving or attempting to do "office" work, medical evidence showed

that his sleep apnea was well controlled with a CPAP machine.  The ALJ's evaluation of the

medical evidence concerning Plaintiff's sleep difficulty was fully supported by the record, and

provided clear and convincing support for the ALJ's credibility assessment.  See, e.g., Carmicle

v. Commissioner, 533 F.3d 1155, 1162 (9th Cir. 2008) (inconsistency between claimant's

testimony and medical evidence is sufficient basis for discounting credibility).

　　　　The ALJ also cited the evidence from a Cooperative Disability Investigations Unit

(CDIU) investigator noted above, which showed that Plaintiff had engaged in strenuous

construction work at a time he alleged that his impairments were severe and disabling.  The ALJ

FINDINGS AND RECOMMENDATION - 14

noted that the investigator reported that, during a period in which he was receiving disability

benefits, Plaintiff moved about his property with apparent ease, was able to jump nearly three

feet to the ground without discomfort or difficulty, was able to climb ladders, was "dirty and

sweaty" had "grease-stained hands with rough calluses" that were consistent with the

performance of strenuous work, and used no assistive devices such as a cane.  The ALJ noted

that Plaintiff had told the investigator that he was doing all the construction work, including

operating cranes, moving logs, and doing electrical and plumbing work, and said he could move

materials weighing 200 pounds.  The ALJ added that the investigator had videotaped Plaintiff "in

work attire walking around the log home project and climbing an eight-foot ladder without

difficulty."  These activities were wholly inconsistent with Plaintiff's testimony about his

impairments and limitations, and provided clear and convincing support for the ALJ's credibility

determination.

3. **Rejection of Lay Witness Testimony**

       Plaintiff contends that the ALJ also failed to provide an adequate basis for concluding

that his wife's testimony "lacked general credibility."

       An ALJ must provide reasons that are "germane" for rejecting lay witness testimony.

Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).

       The ALJ's conclusion that the CDIU investigation "significantly undermin[ed]" Ms.

Easly's testimony concerning Plaintiff's limitations is fully supported by the record.  The ALJ

noted that, less than two months after the CDIU investigation, Ms. Easly had submitted a

statement indicating that Plaintiff needed help getting into and out of the shower, had significant

difficulty standing, walking, lifting, squatting, bending, kneeling, and climbing stairs, and could

not perform most household chores.  He noted that she had also testified that she worked 50 to 70

FINDINGS AND RECOMMENDATION - 15

hours per week, which limited her opportunity to observe Plaintiff's activities during the day, and

that she had testified at the most recent hearing that Plaintiff did "what normal people do" around

the house.  The ALJ also noted that, though Ms. Easly attributed Plaintiff's "alleged sleepiness"

to sleep apnea, medical evidence contradicted this assertion.  The ALJ provided sufficient

reasons for discounting Ms. Easly's testimony.

## Conclusion

A judgment should be entered AFFIRMING the Commissioner's decision and

DISMISSING this action with prejudice.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge.  Objections,

if any, are due September 16, 2013.  If no objections are filed, then the Findings and

Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with

a copy of the objections.  When the response is due or filed, whichever date is earlier, the

Findings and Recommendation will go under advisement.

DATED this 28th day of August, 2013.


          /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 16